UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:18-cv-00003-RJC

| MARY CATHERINE JACKSON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | ORDER |
| NANCY A. BERRYHILL,<br>Acting Commissioner of<br>Social Security, | ) | |
| Defendants. | ) | |

**THIS MATTER** comes before the Court on the parties' cross Motions for Summary Judgment, (Doc. Nos. 17, 20); Plaintiff's Motion to Remand, (Doc. No. 11); and the parties' briefs and exhibits in support. The motions are ripe for adjudication.

I.  BACKGROUND

   A. Procedural Background

Mary Catherine Jackson ("Plaintiff") seeks judicial review of Nancy A. Berryhill's ("Defendant" or "Commissioner") denial of her social security claim. Plaintiff filed an application for Disability Insurance Benefits under Title II of the Social Security Act ("SSA") on July 22, 2014, alleging a disability onset date of February 1, 2014. (Doc. Nos. 9 to 9-1: Administrative Record ("Tr.") at 22, 153–56). Her applications were denied first on September 26, 2014, and upon reconsideration on February 23, 2015. (Tr. 22). Plaintiff filed a timely request for a hearing on April 22, 2015, and an administrative hearing was held by an administrative law judge

1

("ALJ") on September 16, 2016. (Id.).

Following this hearing, the ALJ found that Plaintiff was not disabled under the SSA. (Tr. 19–35). Plaintiff requested a review of the ALJ's decision, but on October 30, 2017, the Appeals Council denied Plaintiff's request for a review. (Tr. 1–3). After having exhausted her administrative remedies, Plaintiff now seeks judicial review of Defendant's denial of her social security claim in this Court.

B. Factual Background

The question before the ALJ was whether Plaintiff was disabled under Sections 216(i) and 223(d) of the SSA. (Tr. 22). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the SSA.[1] Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Plaintiff alleges that her disability began on February 1, 2014, due to a combination of physical and mental impairments.[2]

After reviewing Plaintiff's record and conducting a hearing, the ALJ found that Plaintiff did not suffer from a disability as defined in the SSA. (Tr. 35). In reaching his conclusion, the ALJ used the five-step sequential evaluation process established by the Social Security Administration for determining if a person is disabled. The

---

[1] Under the SSA, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

[2] These impairments are degenerative disc disease, arthritis, history of carpel tunnel symptoms/arthralgia, chronic obstructive pulmonary disease ("COPD"), colitis, and depressive disorder. (Tr. 24).

Fourth Circuit has described the five-steps as follows:

> [The ALJ] asks whether the claimant: (1) worked during the purported period of disability; (2) has an impairment that is appropriately severe and meets the duration requirement; (3) has an impairment that meets or equals the requirements of a listed impairment and meets the duration requirement; (4) can return to her past relevant work; and (5) if not, can perform any other work in the national economy.

Radford v. Colvin, 734 F.3d 288, 290–91 (4th Cir. 2013) (paraphrasing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant has the burden of production and proof in the first four steps. Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). However, at the fifth step, the Commissioner must prove that the claimant is able to perform other work in the national economy despite her limitations. See id.; see also 20 C.F.R. § 416.960(c)(2) (explaining that the Commissioner has the burden to prove at the fifth step "that other work exists in significant numbers in the national economy that [the claimant] can do"). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 34–35).

In reaching his decision, the ALJ first concluded at steps one through three that Plaintiff was not employed, that she suffered from severe physical and mental impairments, and that her impairments did not meet or equal any of the impairments listed in the Administration's regulations. (Tr. 24–30). Therefore, the ALJ examined the evidence of Plaintiff's impairments and made a finding as to Plaintiff's Residual Functional Capacity ("RFC"). In pertinent part, the ALJ found that Plaintiff

> has the [RFC] to perform light work . . . except with occasional posturals; frequent handling with both upper extremities . . . and limited to simple, routine, repetitive tasks, with ability to perform these tasks for two-hour periods with normal rest breaks in an eight-hour day.

(Tr. 30). Having established Plaintiff's RFC, the ALJ concluded that Plaintiff could not perform the work in which she had previously been employed. (Tr. 33–34). Therefore, the ALJ proceeded to the fifth and final step of the process: determining whether, given the limitations embodied in her RFC, Plaintiff could perform any work that existed in significant numbers in the national economy. (Tr. 34–35). To make that determination, the ALJ relied on the testimony of a Vocational Expert ("VE"). The VE testified that Plaintiff could perform the following representative jobs that exist in significant numbers in the national economy: "unskilled cashier,"[3] "sales attendant,"[4] and "routing clerk."[5] (Tr. 35). The ALJ accepted the VE's testimony and concluded that Plaintiff's impairments did not prevent her from working; consequently, Plaintiff's application for Title II benefits was denied. (Id.).

## II. STANDARD OF REVIEW

The Court must decide whether substantial evidence supports the final decision of the Commissioner and whether the Commissioner fulfilled her lawful duty in her determination that Plaintiff was not disabled under the Social Security Act. See 42 U.S.C. §§ 405(g) and 1382(c).

The SSA, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan,

---

[3] DOT 211.462-010, 1991 WL 671840.
[4] DOT 299.677-010, 1991 WL 672643.
[5] DOT 222.587-038, 1991 WL 672123.

4

907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the SSA provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and [do]ing more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome–so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

5

## III. DISCUSSION

### A. Plaintiff's Motion to Remand

The Court first addresses Plaintiff's Motion to Remand, (Doc. No. 11). In her Remand Motion, Plaintiff requests a new hearing before a different ALJ on the grounds that the ALJ and the Administrative Appeals Judge presiding over her claim were not constitutionally appointed. (Doc. No. 17). In Lucia v. SEC, 138 S. Ct. 2044, 2055, (2018), the Supreme Court held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. However, Lucia elucidated that, in the context of Appointments-Clause challenges, only "one who makes a timely challenge" is entitled to relief. Lucia, 138 S. Ct. at 2055 (quoting Ryder v. United States, 515 U.S. 177, 182–83 (1995)). In Lucia, the Supreme Court acknowledged the challenge was timely because it was made before the Commission. Id. To the extent Lucia applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during her administrative proceedings. See, e.g., United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 38 (1952) (holding that parties may not wait until they are in court to challenge agency appointments); see also Elgin v. Dep't of Treasury, 567 U.S. 1, 23 (2012) (requiring the plaintiff to exhaust her constitutional claim before seeking review in federal court). Because Plaintiff failed to timely raise her Appointments Clause claim, it has been forfeited, and no remand is necessary on that basis. Meadows v. Berryhill, No. 7:18-CV-17, 2019 WL 938880, at *2 (E.D.N.C. Feb. 25, 2019); Shipman v. Berryhill, No. 1:17-CV-00309, 2019 WL 281313, at *3 (W.D.N.C.

6

Jan. 22, 2019); Britt v. Berryhill, No. 1:18-CV-00030, 2018 WL 6268211, at *2 (W.D.N.C. Nov. 30, 2018); Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (as amended) (holding that the plaintiff forfeits issues not raised before the ALJ or Appeals Council). For these reasons, this Court **DENIES** Plaintiff's Motion to Remand, (Doc. No. 11), and now proceeds to address the arguments made on summary judgment.

> B. Cross Motions for Summary Judgment

Plaintiff alleges the ALJ erred by (1) improperly considering the medical opinions of record and (2) asking an improper hypothetical question to the VE because the question did not account for Plaintiff's limitations staying on task. The Court agrees with Plaintiff's first allegation of error, and therefore, remands the decision on this ground.

Plaintiff faults the ALJ for discrediting the physical and psychological opinions issued by Dr. Volk, (Tr. 686–90), and the psychological opinion issued by Dr. Entmacher, (Tr. 691–93). The Court agrees that the ALJ's opinion regarding Dr. Volk's testimony "lacks the specific analysis that would allow for meaningful review," and thus, remand is warranted. Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016).

ALJ's must afford treating sources controlling weight if they "find that a treating source's opinion on the issue(s) of the nature and severity of [the] impairment(s) is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also, Mastro v.

7

Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("Although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." (quoting Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam)). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under Social Security Ruling 96–2p an ALJ must "give good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion." SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996). Specifically, the "notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id.

If an ALJ is to discount an opinion, he must provide a clear explanation for doing so and "build an accurate and logical bridge from the evidence to his conclusion" that the testimony was not credible. Monroe, 826 F.3d at 189 (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). The Fourth Circuit has held that "'[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements

8

to the record evidence.'" Id. (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)).

Here, the subsequent reviewer finds that the ALJ did not describe with sufficient particularity his basis for discounting the weight of the testimony of Plaintiff's treating clinician who provided detailed findings regarding the physical functional limitations of Plaintiff and also commented on Plaintiff's mental health limitations—besides the ALJ's conjecturing regarding treating physicians' potential motives for sympathizing with their patients:

> The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality which should be mentioned is that patients can be quite insistent in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patients requests and avoid unnecessary doctor/patient tension. *While it is difficult to confirm the presence of such motives*, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case. The course of treatment pursued by the doctor has not been consistent with what one would expect if the claimant were truly disabled, as the doctor has reported. The undersigned finds Dr. Volk's assessments are too restrictive and inconsistent with treatment records as well as other evidence of record. . . . [and] gives those assessments little weight.

(Tr. 32–33) (emphasis added). Despite the ALJ's determination, the Court is unsure how Dr. Volk's opinion "substantially departs from the record" without further explanation. The only evidence which the ALJ specifies as allegedly contradicting Dr. Volk's assessments is Plaintiff's report of activities of daily living and function, (Tr. 225–32). (Tr. 32). When discussing Plaintiff's function report earlier in his decision, the ALJ noted that Plaintiff's actual activities include "preparing meals,

9

going grocery shopping, picking up her granddaughter from school, doing laundry, doing some cleaning, and caring for her personal needs." (Tr. 32). The ALJ suggested that these activities are consistent with someone who is capable of performing work requiring "light exertion." (Tr. 32). But the ALJ omits important details about Plaintiff's performance of these activities.

Regarding her ability to prepare meals, Plaintiff stated that she can prepare "frozen dinners, cereals, [and] sandwiches" which take her approximately five to ten minutes. (Tr. 227). She stated that her "carpal tunnel makes it hard to stir stuff [and] do dishes." (Tr. 226). Plaintiff noted that she only goes grocery shopping once or twice a month for about an hour. (Tr. 228). She stated that it takes her "all day to clean because of [her] back and hands" and that it takes one to two hours to do laundry once every two weeks. (Tr. 227). The only hobby or interest Plaintiff noted was "spend[ing] time with granddaughter" which she does two to three times a week and that she does "o.k." when spending time with her granddaughter. (Tr. 229). Regarding her social activities, Plaintiff said that she talks on the phone daily and sometimes visits her sister and parents (presumably driving a car to go visit them) but noted that she only goes out when she has to, asserting that "[t]he back pain makes it hard." (Tr. 228–30). She further noted that she does not finish what she starts, (Tr. 230), and that her impairments affect her lifting, squatting, bending, standing, walking, kneeling, stair climbing, completing tasks, concentration, and using hands. (Tr. 230). She stated that she can maybe lift ten to fifteen pounds; never finishes tasks anymore and struggles to concentrate; and has difficulty (1)

10

squatting because it is "hard to get back up," (2) bending because it affects her lower back, (3) standing because it affects her hip and lower back, and (4) using her hands any length of time due to numbing and throbbing. (Tr. 230). She did note that she can walk 300 to 400 feet uphill without needing to stop and rest. (Id.). She claimed that she does "not want to go or do anything," "feel[s] tired all the time," and has "a hard time doing anything." (Tr. 231).

In reviewing the Report, the Court is uncertain what conflicts with Dr. Volk's assessment.[6] Dr. Volk's report indicated that Plaintiff could frequently lift and/or carry less than ten pounds due to her chronic pain from arthritis and intervertebral disc degeneration, COPD, and colitis and noted that an X-Ray dated July 14, 2014 shows scoliosis. (Tr. 686). Dr. Volk noted that Plaintiff would have limitations in walking and lifting due to these impairments. (Id.). In fact, she concluded that Plaintiff would only be able to stand and walk, in combination, in a work-like environment for only a total of two hours each day, and that she could only do this without interruption every sixteen minutes. (Tr. 687). Regarding sitting, Dr. Volk found a similar limitation: she found that Plaintiff could only sit for a total of two hours in an eight-hour workday, and that she could only sit without interruption for thirty minutes. (Id.). Dr. Volk attributed Plaintiff's standing, walking, and sitting

---

[6] Additionally, it is unclear how Plaintiff's abilities to prepare frozen food, cereals and sandwiches; talk on the phone; pick up her granddaughter from school; grocery shop once a month; do laundry once every two weeks; occasionally clean; and care for her personal needs translates into an ability to perform light exertion for a full workday and workweek despite Plaintiff's severe physical and mental impairments.

11

capabilities to Plaintiff's intervertebral disc generation and noted that Plaintiff's colitis would require her to take frequent breaks. (Id.). Dr. Volk found that, in total, Plaintiff would only be able to consistently perform in a competitive work-like environment by alternating between standing/walking and sitting for four hours in an eight-hour workday and that she could not do those activities if she was required to perform them thirty to forty hours a week. (Id.). She cited the aforementioned impairments as the cause for these functional limitations and additionally noted Plaintiff's intermittent nausea and vomiting would prevent her from performing these activities. In discussing specific postural activities, Dr. Volk concluded that Plaintiff can never climb, kneel, balance, and crawl and can only occasionally stoop, crouch, and bend due to her arthritis and intervertebral disc degeneration which cause joint pain and stiffness. (Id.). She also concluded that Plaintiff's reaching, handling, feeling, and pushing/pulling are affected by her impairments—Plaintiff "experiences problems with handling of objects and would have inability to sustain frequent physical activities" due to her neuropathy, intermittent tremor in hands, carpal tunnel syndrome and arthritis. (Tr. 688). Regarding environmental restrictions, Dr. Volk opined that Plaintiff "would have limitations on exertional activities from fatigue and shortness of breath" and noted that "she has fallen from balance issues" due to COPD. (Id.). Finally, Dr. Volk determined that Plaintiff "would not have the ability to maintain attention and concentration or to maintain

attendance from all her medical problems."[7] (Id.).

Without direction or explanation from the ALJ, the Court is confused as to what inconsistencies exist between Dr. Volk's assessment and Plaintiff's function report. Indeed, while Dr. Volk's report did not address Plaintiff's daily activities, such as preparing sandwiches or picking up her granddaughter from school, the Court does not see an obvious conflict between the limitations Dr. Volk attributed to Plaintiff and Plaintiff's daily activities. It is insufficient for an ALJ to state in conclusory fashion that there are apparent inconsistencies between a treating doctor's assessment and a plaintiff's daily activities and function report without identifying and explaining what those inconsistencies are. See Monroe, 826 F.3d at 189 (instructing ALJs to "build an accurate and logical bridge from the evidence to [their] conclusion[s]" when they discredit a source's testimony (quoting Clifford, 227

---

[7] This is generally consistent with the opinion of Plaintiff's treating psychiatrist, Dr. Entmacher, regarding Plaintiff's mental functional limitations, who determined that Plaintiff would have "marked" or "extreme" limitations in her ability to sustain concentration and persistence; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 691–92). However, the ALJ also discounted Dr. Entmacher's assessment, finding that Dr. Entmacher also "apparently relied upon the claimant's subjective report of symptoms and limitations." (Tr. 33). Nevertheless, the Court finds that the ALJ provided additional, sufficient, and specific reasons for giving Dr. Entmacher's opinion little weight: (1) noting that Dr. Entmacher assigned Plaintiff a GAF of 55, which is inconsistent with the extreme and marked limitations Dr. Entmacher found Plaintiff to have; and (2) explaining that Dr. Entmacher determined these limitations began in April 2014, yet he did not evaluate Plaintiff until a year later. (Tr. 33). Therefore, the Court finds that the ALJ's evaluation of Dr. Entmacher's opinion is not grounds for remand because the ALJ sufficiently and specifically linked the evidence to his conclusion regarding why Dr. Entmacher's opinion merits little weight.

13

F.3d at 872)); Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 663 (4th Cir. 2017) (admonishing ALJs to "[s]how their work" so that subsequent reviewers can conduct meaningful reviews of ALJs' decisions). While the ALJ opines that "[t]he course of treatment pursued by [Dr. Volk] has not been consistent with what one would expect if the claimant were truly disabled," he does not elaborate on what course of treatment would have been consistent with a finding of disability. This Court does not have the medical expertise that a treating clinician for physical medicine issues—such as Dr. Volk—has, and it declines to speculate about what this supposed treatment course would be. Neither will it conclude that Dr. Volk fell prey to Plaintiff's alleged improper pressuring, nor will it impute improper motives to Dr. Volk in arriving at her conclusions regarding Plaintiff's functional limitations when the Court does not even have a scintilla of evidence showing such improper conduct or motives.

Because the ALJ did not explain how Plaintiff's function report is inconsistent with Dr. Volk's assessment—and because no other consultative examination by physical medicine consultants or mental health consultants was ordered for Plaintiff and in the record—the Court is unsure what "other evidence in the records" serves as a good reason for giving little weight to Dr. Volk's assessments. (Tr. 33). This presents the same lack of ALJ explanation or guidance at issue in Monroe which the Fourth Circuit found problematic because it

14

"preclude[d] meaningful review."[8] Monroe, 826 F.3d at 191. The Court is unsure of what other evidence it should look to, and as such, it simply cannot conclude that substantial evidence supports the ALJ's decision. Accordingly, remand is warranted because the ALJ failed to "give good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion." SSR 96–2p, 1996 WL 374188, at *5.

IV. CONCLUSION

Although the Court remands this case on Plaintiff's allegation of error regarding the ALJ's failure to properly consider the medical opinion of Plaintiff's treating clinician, the ALJ should further note Plaintiff's other objections to his decision upon reconsideration.

**IT IS THEREFORE ORDERED that:**

1. Plaintiff's Motion to Remand (to another ALJ), (Doc. No. 11), is **DENIED**;

---

[8] The Fourth Circuit framed the conundrum it found itself in as follows:

> The ALJ stated that he gave that opinion only "limited weight" based on a determination that "the objective evidence or the claimant's treatment history did not support the consultative examiner's findings." A.R. 20. However, the ALJ did not specify what "objective evidence" or what aspects of Monroe's "treatment history" he was referring to. As such, the analysis is incomplete and precludes meaningful review.

Monroe, 826 F.3d at 191.

15

2. Plaintiff's Motion for Summary Judgment, (Doc. No. 17), is **GRANTED**;

3. Defendant's Motion for Summary Judgment, (Doc. No. 20), is **DENIED**;

4. Plaintiff's Motions for Extension of Time, (Doc. Nos. 15, 16), is **DENIED as moot**;

5. This matter is **REMANDED** for a new hearing consistent with this Order; and

6. The Clerk of Court is directed to close this case.

Signed: March 25, 2019

Robert J. Conrad, Jr.
United States District Judge